# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| **IDRIS MERIDA, et al.** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**OLIN CORPORATION,** )<br>)<br>**Defendants.** )<br>) | **CASE NO.:** |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Olin Corporation ("Olin"), pursuant to 28 U.S.C. §§ 1441, 1446, and the Class Action Fairness Act of 2005 ("CAFA"), as codified in 28 U.S.C. §§ 1332(d) and 1453, and with full reservation of all defenses, provides notice of its removal of the above-styled action from the Circuit Court of Washington County, Alabama, to the United States District Court for the Southern District of Alabama, Mobile Division. In support of removal, Olin states as follows:

## INTRODUCTION

1. On June 4, 2018, Idris Merida and 24 other plaintiffs filed this action against Defendants Olin Chlor Alkali Logistics, Inc., Charles Whisonant, and Ken Corley. A copy of the Complaint and all other process, pleadings, and orders is attached hereto as Exhibit A.

1

2. On June 26, 2018, Plaintiffs filed a Motion to Substitute Olin Chlor Alkali Logistics, Inc. for Olin, which was granted. *Id.*

3. On June 28, 2018, Plaintiffs filed an Amended and Restated Complaint, naming Olin, Mr. Whisonant, and Mr. Corley as Defendants. *Id.* There were 25 total plaintiffs in the Amended and Restated Complaint. *Id.*

4. Both the initial Complaint and the Amended and Restated Complaint alleged a single chlorine gas leak from Olin's facility located in Washington County on February 15, 2017. *Id.*

5. Plaintiffs moved to dismiss Mr. Whisonant and Mr. Corley on July 6, 2018. *Id.* The Court granted the motion on July 16, 2018. *Id.*

6. Olin answered the Amended and Restated Complaint on August 8, 2018. *Id.*

7. From July 30, 2018 through January 23, 2019, Plaintiffs moved six times to add plaintiffs. *Id.*

8. The Circuit Court of Washington County, Alabama granted each motion to add plaintiffs. By February 15, 2019, the total number of Plaintiffs exceeded 100. *Id.*

9. On August 10, 2022, Plaintiffs filed their Second Amended and Restated Complaint ("SARC"). *See generally* Ex. B, SARC. The number of Plaintiffs in the SARC totals 141. *See generally Id.*

10. Olin timely filed its Answer to the SARC on August 24, 2022. *Id.*

11. The SARC alleges—for the first time in this action—four additional chlorine gas leaks, occurring on August 11, 2020, October 28, 2020, October 16, 2021, and January 27, 2022. Ex. B, SARC ¶¶ 165–68.

12. The jurisdictional requirements under CAFA are met: (i) this is a mass action composed of 141 plaintiffs; (ii) each Plaintiff is—upon information and belief—a citizen of Alabama, a State that is different from the States of which Olin is a citizen; (iii) the amount in controversy, exclusive of interest and costs, exceeds $75,000 for each plaintiff; and (iv) the combined amount in controversy, exclusive of interest and costs, exceeds $5,000,000.

13. Olin has satisfied the procedural requirements for removal under 28 U.S.C. § 1446.

14. Olin denies Plaintiffs' allegations and denies that Plaintiffs have suffered any harm as a result of Olin's alleged conduct. Nothing in this Notice of Removal constitutes an admission of any allegation in the SARC or a waiver of any defense, argument, or principle of equity available to Olin. Subject to and without waiving the foregoing, Olin now removes the state-court action to this Court.

## OLIN HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. § 1446

15. Venue is proper in this Court because Plaintiffs originally filed this action in the Circuit Court of Washington County, Alabama, and the United States District Court for the Southern District of Alabama, Mobile Division, is the "district court of the United States for the district and division within which [the state-court action] is pending." 28 U.S.C. § 1446(a); *see* 28 U.S.C. § 89; 28 U.S.C. § 1453.

16. Removal is timely pursuant to 28 U.S.C. § 1446(b)(1) and 28 U.S.C. § 1453(b)(2). The SARC was filed and served on Olin on August 10, 2022 via the State of Alabama's Alacourt system.

17. Prior to the SARC, Plaintiffs alleged a single gas leak. A civil action does not qualify as a "mass action" for purposes of CAFA if "all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State." 28 U.S.C. § 1332(d)(11)(B)(ii)(I) (emphasis added). As a result, this action was not a "mass action" for purposes of CAFA before Plaintiffs filed the SARC. *See id.*

18. Plaintiffs do not allege that the four newly alleged gas leaks constitute a "contextually connected series of incidents that culminate[] in [a] harm-causing event or occurrence." *See Spencer v. Specialty Foundry Prod. Inc.*, 953 F.3d 735,

743 (11th Cir. 2020); *see id.* at 744 (vacating district court's remand order where plaintiffs' complaint failed to allege a "continuous, related course of conduct culminating in one harm-causing event or occurrence"). Rather, Plaintiffs allege that each newly alleged leak was discrete: the leaks allegedly occurred on specific days and released defined amounts of chlorine gas. Ex. B, SARC ¶¶ 164–68.

19. As a result, the new gas leaks Plaintiffs allege for the first time in the SARC constitute <u>multiple</u> "event[s] or occurrence[s]" for purposes of CAFA. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(I); *see also Spencer*, 953 F.3d at 743–44.

20. The SARC was the first time in this litigation that Plaintiffs had alleged multiple events or occurrences as the basis for their purported injuries. As a result, the SARC was the first "amended pleading, motion, order, or other paper" from which Olin could ascertain that this action was removable under CAFA. *See* 28 U.S.C. § 1446(b)(3).

21. Thus, this Notice of Removal is timely because it is filed within thirty days of service of the SARC.[1]

---

[1] Actions removed under CAFA are not subject to the one-year limitation in 28 U.S.C. § 1446(c). 28 U.S.C. § 1453(b).

22. Exhibit A to this Notice of Removal contains "a copy of all process, pleadings, and orders" served upon Olin in the above-styled action in the Circuit Court of Washington County, Alabama. 28 U.S.C. § 1446(a).[2]

23. Pursuant to 28 U.S.C. § 1446(d), Olin is serving a copy of this Notice of Removal upon counsel for Plaintiffs, and a copy is being filed with the Clerk of the Circuit Court for Washington County, Alabama.

24. Olin reserves the right to amend or supplement this Notice of Removal.

25. If any question arises as to the propriety of the removal of this action, Olin requests the opportunity to present a brief and requests oral argument in support of removal.

26. As shown below, this case is removable to federal court pursuant to CAFA.

## THIS CASE IS REMOVABLE UNDER CAFA

27. Olin may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

---

[2] Because § 1446(a) only requires process, pleadings, and orders, Olin has not included in Exhibit A the hundreds of subpoenas and other such documents. Olin has no objection to filing these discovery documents at the Court's request. For the Court's review, a docket sheet is attached hereto as Exhibit D.

28. Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In addition, there must be 100 or more members in the proposed plaintiff classes. *See* 28 U.S.C. § 1132(d)(5)(B); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) ("CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million.").

29. A "mass action" is a "class action" for purposes of CAFA if (1) the civil action meets CAFA's requirements for a class action, (2) more than 100 plaintiffs are "proposed to be tried jointly on the basis that the plaintiffs' claims involve common questions of law or fact," (3) and no exclusions under 28 U.S.C. § 1332(d)(11)(B)(ii) apply. 28 U.S.C. § 1332(d)(11)(B)(i). Further, jurisdiction shall exist only for those plaintiffs whose damages satisfies the amount in controversy requirement of 28 U.S.C. § 1332(a). *Id.*

30. A notice of removal need only provide "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The rule governing the content of a notice of removal, 28 U.S.C. § 1446, "[t]racks the general pleading requirement[s]

stated in [Fed. R. Civ. P.] 8(a)," and submission of proof is only necessary if the allegations in the notice of removal are contested. *See Dart Cherokee Basin*, 574 U.S. at 89 ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."). The requirements for removal are satisfied here.

### A. Plaintiffs have proposed to try their claims jointly on the basis that the claims involve common questions of law or fact.

31. Although the initial Complaint included 25 plaintiffs, there are now 141 plaintiffs in this case. Ex. A.

32. Plaintiffs—not Olin—proposed that their claims be tried jointly by adding additional plaintiffs through six motions from July 30, 2018 to January 23, 2019. *Id.*

33. Additionally, the Circuit Court of Washington County, Alabama held a status conference on June 30, 2022 to discuss the manner in which to try Plaintiffs' claims. Ex. C, Hollis Aff. ¶ 5. At that status conference, Plaintiffs' counsel proposed on the record that all 141 Plaintiffs be tried together in a single trial. *Id.* ¶ 6. At no point in this litigation has Olin proposed the Plaintiffs' claims be tried in a single trial. *Id.* ¶ 7.

34. According to the SARC, Plaintiffs' claims involve common questions of law and fact. Plaintiffs plead collectively that only the five chlorine gas leaks caused all of their injuries; there is no distinction between the Plaintiffs in this regard. There are then, common questions of fact as to Olin's conduct that allegedly caused the leaks, Olin's hiring practices, and the dispersion of chlorine gas in the atmosphere around Olin's plant, to name a few.

35. Further, all Plaintiffs join in each cause of action—Nuisance; Trespass; Conspiracy; Negligence; Wantonness; Negligent Hiring, Training and Supervision; Negligence Per Se; and Tort of Outrage. Thus, questions of law concerning each of these claims are common to all Plaintiffs.

**B.   There is minimal diversity between Plaintiffs and Olin.**

36. Under CAFA, minimal diversity is met where "any member of a [mass action] is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

37. Olin is a Virginia corporation that has its principal place of business in Missouri. Olin is thus a citizen of Virginia and of Missouri.

38. The SARC alleges that each plaintiff in this case is an Alabama citizen. Ex. B, SARC ¶¶ 1–141.

39. Accordingly, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A) because Plaintiffs are citizens of Alabama and because Olin is a citizen of Virginia and Missouri. *See* 28 U.S.C. § 1332(d)(2)(A).³

### C. Plaintiffs meet CAFA's amount-in-controversy requirements.

40. "[T]he removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

41. "[T]he pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka*, 608 F.3d at 751 (quoting *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009)).

42. The removing defendant may satisfy its burden by showing that it is "'facially apparent' from the [plaintiff's] pleading itself that the amount in controversy exceeds the jurisdictional minimum." See *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citing *Pretka*, 608 F.3d at 754). When determining whether the allegations in a complaint facially establish the

---

³ This removal is not based in whole or in part on the Plaintiffs' voluntary dismissal of Mr. Whisonant and Mr. Corley. Even if they were still defendants and Alabama citizens, the case would be removable under CAFA because Plaintiffs now number more than 100 and allege multiple "events or occurrences," and Mr. Whisonant and Mr. Corley were not "primary defendants" or defendants "from whom significant relief is sought." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II), 1332(d)(4)(B).

required amount in controversy, a district court may apply its "judicial experience" and "common sense." *Id.* at 1062–63.

43. The Supreme Court has made clear that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*, 574 U.S. at 89; *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019).

44. "**Complaints alleging serious, lasting physical injuries are typically removable** because it is facially apparent that these claims are worth more than $75,000." *Hickerson v. Enter. Leasing Co. of Georgia, LLC*, 818 F. App'x 880, 883 (11th Cir. 2020) (emphasis added).

45. Alabama juries have historically aligned with *Hickerson*'s analysis in toxic tort cases such as this one. In 1988, a jury in Alabama awarded $300,000[4] to a worker who was exposed to chlorine gas. *See Johnson v. Container Corp. of America*, JVR No. 43284. Like Plaintiffs have alleged in this case, the plaintiff in *Johnson* suffered a permanent injury—namely the loss of his sense of smell. Unlike the Plaintiffs here, however, the plaintiff in *Johnson* did not allege any property damage. *See id.*

---

[4] According to the U.S. Bureau of Labor's inflation calculator, the award in *Johnson* would be worth over $725,000 in 2022 after adjusted for inflation. *See* https://www.bls.gov/data/inflation_calculator.htm.

46. Similarly, an Alabama jury awarded $600,000 to a teacher who suffered lung damage as a result of inhaling a toxic chemicals used to clean the cafeteria's cooking hoods. *Monday vs. One Stop Environmental, LLC*, 11 ACTR 9-9. As with the plaintiff in *Johnson*, the plaintiff's injuries in *Monday* were not fatal.

47. Alabama juries have also delivered significant awards for injury to real property by means of a toxic substance. In *James Wood Development v. McRee, et al.*, 13 ACTR 6-15, a jury found in favor of a developer on claims that included trespass, nuisance, and conspiracy where the developer purchased land, only to discover that defendants had stored toxic substances beneath the soil. The jury award of $1,616,524 exceeded the $1,500,000 price that the developer paid for the property. *See James Wood Development v. McRee*, in the Circuit Court of Jefferson County, Bessemer Division, Case No. 2006-cv-000981, Docket Entry No. 599. Notably, this award included no personal injury claims.

48. Juries around the country have also awarded many times the amount-in-controversy threshold in toxic tort cases. For example, a California jury awarded over $2,000,000,000 to two plaintiffs in 2019 against Monsanto for personal injuries arising out of exposure to an allegedly carcinogenic compound in Roundup. *Pilliod v. Monsanto Co.*, 19 N.W.P.I. Lit. Rpts. 234. In 2020, a jury in the Eastern District of Louisiana awarded $7.5 million to a plaintiff who developed mesothelioma, a severe, permanent, and life-threatening ailment, as a result of his exposure to

asbestos while working for the defendant. *James Gaddy, et al. v. Taylor-Seidenbach, Inc., et al.*, No. CV 19-12926.

49. In this case, Plaintiffs bring claims under theories of nuisance; trespass; conspiracy; negligence; wantonness; negligent hiring, training, and supervision; negligence per se, and outrage. *See* Ex. B, SARC. ¶¶ 171–97.

50. Plaintiffs do not demand a specific amount of damages in the Second Amended and Restate Complaint, though they do allege that they have suffered the following injuries:

- the use and/or enjoyment of their property;
- depreciation of property value;
- depreciation of rental value of their property;
- damage to real and personal property;
- past, present and future mental pain and anguish;
- past, present, and future physical pain and discomfort;
- past, present and future medical treatment;
- depression;
- inconvenience;
- loss of use; and
- physical injury.

Ex. B, SARC. ¶ 173.

51. Further, Plaintiffs allege that Olin caused them "bodily injury, emotional distress, mental anguish, incurred medical expenses, . . . [and] **permanent injuries**." *Id.* at ¶ 164 (emphasis added); *see Hickerson*, 818 F. App'x at 883.

52. Indeed, the SARC notes that chlorine gas is "extremely dangerous" and can cause "severe, permanent, and life-threatening injuries, including death." *Id.* at ¶ 156.

53. In addition to the compensatory damages listed above, Plaintiffs also claim punitive damages against Olin. *Id.*

54. On August 26, 2021, Plaintiffs' counsel made an oral demand of $80,000 per plaintiff. Ex. C, Hollis Aff. ¶ 3–4. Significantly, this demand came almost a year before the SARC, when the operative Complaint alleged only a single gas leak. While not in writing, the Court can nevertheless consider Plaintiffs' demand for the purposes of assessing amount in controversy. *See McCrory v. Costco Wholesale Corp.*, No. CV 21-0496-WS-B, 2022 WL 377995, at *2 (S.D. Ala. Feb. 7, 2022) (collecting cases).[5]

55. When read in light of other toxic tort cases, both in Alabama and in other states, it is apparent that each Plaintiff in this case seeks damages in excess of

---

[5] Olin does not proffer Plaintiffs' oral demand as an "other paper" to establish when removal was first ascertainable under 28 U.S.C. § 1446. For the reasons mentioned above, the SARC is the first document establishing the removability of this case.

$75,000. The Plaintiffs' seeking damages for "permanent injuries" is, in and of itself, sufficient to establish the amount in controversy. *See Hickerson*, 818 F. App'x at 883. Nevertheless, Plaintiffs also seek damages for injuries to their property *and* punitive damages against Olin. *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered."). The amount in controversy is confirmed by Plaintiffs' own attorney who demanded $80,000 per Plaintiff <u>prior to</u> the addition of the four newly alleged chlorine gas leaks in the SARC.

56. Thus, while Olin denies that Plaintiffs are entitled to any relief whatsoever, the requisite amount in controversy under CAFA is satisfied.[6] *See Pretka* 608 F.3d at 751 (in determining whether the amount in controversy is satisfied, the question is "what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover" (quoting *Amoche*, 556 F.3d at 51)).

### D. CAFA's mass action exceptions do not apply to this case.

57. A civil action is not a "mass action" for purposes of CAFA if any of the following exceptions apply:

---

[6] Because the amount in controversy is satisfied for each of the 141 plaintiffs, the total amount in controversy exceeds $10,575,000 and therefore satisfies CAFA's $5,000,000 aggregate amount in controversy as well.

(I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

(II) the claims are joined upon motion of a defendant;

(III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

(IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

28 U.S.C. § 1332(d)(11)(B)(ii).

58.  As discussed above, the first exception does not apply because the claims do not arise from an event or occurrence; rather, the claims in the SARC arise from multiple events or occurrences—namely, five distinct chlorine gas leaks. Because the SARC does not allege a "continuous, related course of conduct culminating in one harm-causing event or occurrence," the "local event" exclusion does not apply. *See Spencer*, 953 F.3d at 744.

59.  The second exception is inapplicable because it was Plaintiffs—not Olin—who moved to add additional plaintiffs, such that the total number of plaintiffs exceeded 100. Ex. A; *see Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013) ("At a minimum, what is clear from [CAFA's] text and structure is that the plaintiffs can [invoke CAFA jurisdiction if they] propose a joint trial, either by naming 100 or more plaintiffs in a single complaint or by their litigation conduct at any time prior to defendants' removal of their action to federal court."). Additionally,

Plaintiffs proposed for their claims to be tried in a single trial at the June 30, 2022 scheduling conference. Ex. C, Hollis Aff. ¶ 5–6.

60. The third exception is not relevant because Plaintiffs do not purport to bring this action on behalf of the general public. *See generally* Ex. B, SARC.

61. Finally, the fourth exception does not apply. All 141 plaintiffs have brought their claims in a single action to be tried jointly. *See generally id.* They have not consolidated multiple actions for the purposes of pretrial proceedings.

_____

For these reasons, Olin respectfully removes this action from the Circuit Court of Washington County, Alabama, to the United States District Court for the Southern District of Alabama, Mobile Division, and requests that the Court exercise its subject-matter jurisdiction over this matter and grant such other and further relief to Olin as is just and proper.

[SIGNATURE BLOCKS ON FOLLOWING PAGE]

Respectfully submitted,

Dated:  September 9, 2022         By:  */s/Trey Bundrick*
                                       One of the Attorneys for Defendant
                                       Olin Corporation

OF COUNSEL:
Lee M. Hollis (HOL075)
lhollis@lightfootlaw.com
W. Larkin Radney, IV (RAD008)
lradney@lightfootlaw.com
Charles M. Hearn (HEA049)
chearn@lightfootlaw.com
Trey Bundrick (BUN016)
tbundrick@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
(205) 581-0700 (phone)
(205) 581-0799 (fax)

Halron W. Turner, Esq. (TUR012)
hwt@tokh.com
TURNER, ONDERDONK, KIMBROUGH, & HOWELL, PA
Post Office Drawer 1389
Chatom, AL 36518
(251) 847-2237 (phone)
(251) 847-3115 (fax)

*Counsel for Defendant Olin Corporation*

## **CERTIFICATE OF SERVICE**

I certify that on September 9, 2022, I filed a copy of the foregoing electronically using the CM/ECF, which will send notification to counsel of record registered for CM/ECF system. I also served a copy by electronic and/or U.S. mail to:

Joseph C. McCorquodale, III, Esq.
mccmcc@mccorquodalelawfirm.com
MCCORQUODALE LAW FIRM
Post Office Drawer 1137
Jackson, Alabama 36545

Stewart L. Howard, Esq.
showard@howardfesta.com
HOWARD-FESTA, LLP
Post Office Box 1903
Mobile, Alabama 36633

Steven L. Nicholas, Esq.
sln@cunninghambounds.com
CUNNINGHAM BOUNDS, LLC
Post Office Box 66705
Mobile, AL 3660

*/s/ Trey Bundrick*
Of Counsel