IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IDRIS MERIDA, *et al*.,                    :
      Plaintiffs,                          :
                             :
vs.                                        :          CIVIL ACTION: 22-358-KD-MU
                             :
OLIN CORPORATION,                          :
      Defendant.                           :
                             :

## REPORT & RECOMMENDATION

This matter is before the Court on Plaintiffs' Motion for Remand (Doc. 6) and supporting brief, Defendant's response (Doc. 8), and Plaintiffs' Reply (Doc. 10). This matter is now ripe for consideration and has been referred to the undersigned Magistrate Judge for entry of a report and recommendation under 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Plaintiffs' Motion to Remand (Doc. 6) be **GRANTED**, that Plaintiffs' request for an award of attorney's fees and costs incurred in seeking remand be **DENIED**, and that this action be **REMANDED** to the Circuit Court of Washington County, Alabama.

## I.   Procedural History.

On February 15, 2017, Plaintiffs (approximately 25 individuals) filed a complaint in the Circuit Court of Washington County, Alabama, alleging eight counts of various

state-law tortious actions against Olin Corporation ("Olin")[1], Ken Corley, and Charles

Whisonant.

On or around June 20, 2018, parties' counsel conferred by telephone and

reached an agreement regarding the dismissal of Ken Corley and Charles Whisonant

from the action in exchange for Defendant's agreement not to remove the lawsuit to

federal court. Defendant Olin's counsel, Mr. Turner, confirmed the telephone

conversation and agreement in a June 21, 2018 email.  On June 28, 2018, Plaintiffs and

Olin entered into the Voluntary Dismissal Agreement (the "Agreement" or "contract"), in

which the Plaintiffs agreed to dismiss Ken Corley and Charles Whisonant, the only non-

diverse defendants in this action.  The Agreement stated in pertinent part:

> WHEREAS, Plaintiffs filed a complaint in the Circuit Court of Washington County, Alabama against Defendants, bearing case number 65-CV-2018-900048 (the "Lawsuit");
>
> WHEREAS, Plaintiffs are willing to voluntarily dismiss Ken Corley and Charles Whisonant as party defendants from the Lawsuit without prejudice pursuant to the below listed covenants and conditions;
>
> NOW, THEREFORE, in consideration of the mutual covenant and conditions hereinafter set forth, the Parties agree as follows:
>
> **1.    Removal**.  Defendant, Olin, agrees not to remove or seek to remove the Lawsuit to federal court under 28 U.S.C. § 1332 based in whole or in part on Plaintiffs' voluntary dismissal of Ken Corley and Charles Whisonant as party defendants from the Lawsuit.  The dismissal shall be without prejudice, with costs and attorney's fees taxed as paid.
>
> **. . .**
>
> **3.    Motion to Dismiss**.  Within fifteen (15) days of the execution of this Agreement, Plaintiffs shall cause the attached Motion to Dismiss to be filed in the Circuit Court of Washington County, Alabama.  Such dismissal shall

---

[1]    The action was initially filed against Olin Chlor Alkali Logistics, Inc.  On June 26, 2018, Olin Corporation was substituted for Olin Chlor Alkali Logistics, Inc. (Doc. 1 at 1-2).

> be without prejudice, with costs and attorneys' fees taxed as paid.  Should, for any reason, the Court deny the motion to Dismiss, this Agreement shall automatically be deemed null and void.

(Doc. 6-1 at 17). Pursuant to the Agreement, Plaintiffs moved to dismiss Ken Corley and Charles Whisonant, and the State Court granted the motion on July 16, 2018.

The parties litigated the case in state court for quite a while. Then, on August 10, 2022, Plaintiffs filed a Second Amended Restated Complaint, asserting the same eight counts previously alleged but alleging an additional four chlorine gas releases, occurring on August 11, 2020, October 28, 2020, October 16, 2020, and January 27, 2022, and increasing the number of named plaintiffs to 141.

On September 9, 2022, Olin filed a Notice of Removal with this Court pursuant to 28 U.S.C. §§ 1441, 1446, 1453, and 28 U.S.C. §§ 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). (Doc. 1). Plaintiffs now move to have the case remanded to State Court based on terms of the Voluntary Dismissal Agreement.  Plaintiffs also request an award of costs and expenses, including attorney's fees, incurred because of the removal, under 28 U.S.C.A. § 1447(c).

## II.      Analysis.

### A.  Motion to Remand.

Pursuant to 28 U.S.C.A § 1441, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  The current action is composed of 141 plaintiffs, each Plaintiff -upon information and belief- a citizen of Alabama, a State

different from the States of which Olin (the sole defendant) is a citizen, the amount in

controversy, exclusive of interest and costs, exceeds $75,000 for each plaintiff, and the

combined amount in controversy, exclusive of interest and costs, exceeds $5,000,000.

Accordingly, this action meets the requirements of the CAFA, codified at § 1332(d), over

which this court has original jurisdiction.[2]  The issue at hand is not the applicability of

the CAFA but whether Olin waived its right to remove this under CAFA upon execution

of the Voluntary Dismissal Agreement.  The parties agree that the answer here is

determined by the application of "ordinary contract principles", *Glob. Satellite Commc'n

Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004) (internal quotation

omitted), based on Alabama law (per the Agreement).  (*See* Doc. 6-1 at 18).

---

[2]      Pursuant to 28 U.S.C. § 1332(d)(2):

The district courts shall have original jurisdiction of any civil action in which
the matter in controversy exceeds the sum or value of $5,000,000,
exclusive of interest and costs, and is a class action in which—

**(A)** any member of a class of plaintiffs is a citizen of a State different from
any defendant;

**(B)** any member of a class of plaintiffs is a foreign state or a citizen or
subject of a foreign state and any defendant is a citizen of a State; or

**(C)** any member of a class of plaintiffs is a citizen of a State and any
defendant is a foreign state or a citizen or subject of a foreign state.

District courts are instructed to decline to exercise jurisdiction under this section,
however, if the class action falls within certain parameters that closely tie the class
action with state in which the action was originally filed.  *See* 28 U.S.C. § 1332(d)(4).
Plaintiffs assert that had Corley and Whisonant not been dismissed from the action, the
lawsuit would fall within the "local controversy" exception of § 1332(d)(4) and be
nonremovable.  Given the Court's findings here, it is unnecessary to discuss the
applicability of the statutory exception.

Accordingly, we first ask, is the contract ambiguous? A contract is not rendered ambiguous merely because the parties dispute its meaning. *Orkin Exterm. Co. v. FTC*, 849 F.2d 1354, 1360 (11th Cir. 1988). Rather, a contract is ambiguous if it is "*reasonably* susceptible to more than one interpretation." *Orkin*, 849 F.2d at 1360 (emphasis added) (quoting *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 780 (11th Cir. 1982)).  "When interpreting a contract, a court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." *Public Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.,* 80 So.3d 171, 180 (Ala. 2010).

> A court may not twist the plain meaning of the terms in a contract to create an ambiguity under the guise of interpretation. The primary source for deciding whether a contract is clear is the text of the document itself. It is well established in Alabama that when an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners.... Even if some ambiguity does exist in a contract, a court has the duty to accept a construction that will uphold the contract, rather than one that will make it invalid....

*Southland Quality Homes, Inc. v. Williams,* 781 So.2d 949, 953 (Ala. 2000) (internal citations omitted).  With this standard in mind, the Court turns to the relevant portion of the Agreement, which states:

> **Defendant, Olin, agrees not to remove or seek to remove the Lawsuit to federal court under 28 U.S.C. § 1332 based in whole or in part on Plaintiffs' voluntary dismissal of Ken Corley and Charles Whisonant as party defendants from the Lawsuit.**

A first glance reading of this clause provides that Olin will not remove the lawsuit to federal court under § 1332 for the sole reason that Plaintiffs voluntarily dismissed Corley and Whisonant from the lawsuit – that is, "based in whole" on the

dismissal of defendants.  And also, Olin agrees not to remove the lawsuit to federal court under § 1332 for any other reason – that is, "based in part" on the dismissal of defendants.  This would include removal pursuant to the CAFA, codified at §1332(d).  Giving effect to all the provisions of the Agreement, *Underwriters at Lloyds Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea Ltd*., 882 F.3d 1033, 1050–51 (11th Cir. 2018) ("A document should be read to give effect to all its provisions and to render them consistent with each other.") (citations omitted), the "based in whole or in part" language must reference the entire consideration given by the parties, dismissal in exchange for no removal, which is the position of Plaintiffs.  Olin, however, interprets "based in whole or in part" as a limitation on the agreement - that is, a bar to removal of the lawsuit to federal court under any provision of 28 U.S.C. § 1332 where Corley and Whisonant's absence from the lawsuit forms the basis, in any way, for the removal. For Olin, removal would be appropriate pursuant to CAFA.  Due to the construction of the phrase and its placement within the provision, each side's interpretation of the contract is reasonable.  *See McLemore v. Hyundai Motor Mfg. Alabama, LLC*, 7 So. 3d 318, 328 (Ala. 2008) ("An instrument is unambiguous if only one reasonable meaning clearly emerges.") (internal quotations and citations omitted).  There's more than one reasonable interpretation, so the Court must acknowledge the ambiguity of the operative provision.  *See Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.,* 622 So.2d 314, 317 (Ala.1993) (explaining when any aspect of a contract is capable of more than one meaning, it is ambiguous), *but cf., Yu v. Stephens*, 591 So.2d 858, 859-60 (ala. 1991) ("just because the parties allege different

constructions of an agreement, it does not necessarily mean that the agreement is ambiguous.").

Where contract language is ambiguous on its face, courts turn to established rules of contract construction to resolve the ambiguity. *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997) ("When we find an agreement to be ambiguous, we must employ established rules of contract construction to resolve the ambiguity found in the inartfully drafted document."). "The intention of the parties at the time of making the contract controls, not subsequent perceptions." *Devlin v. Ingrum*, 928 F.2d 1084, 1090 (11th Cir. 1991). Also, courts are to derive the intent of the parties from the contract as a whole. *FabArc Steel Supply, Inc. v. Composite Const. Sys., Inc.*, 914 So. 2d 344, 358 (Ala. 2005). Under established rules of contract construction, courts, first, have a duty to accept the construction that will uphold the contract rather than destroy it. *Voyager Life Ins*., 703 So.2d at 948 ("With a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract."). "[I]f there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed." *City of Fairhope v. Town of Daphne,* 282 Ala. 51, 58, 208 So.2d 917, 924 (1968). Last, "if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem,* any ambiguity must be construed against the drafter of the contract." *FabArc Steel Supply, Inc.*, 914 So. 2d at 357 (quoting *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000)). For the reasons

explained below, ordinary rules of contract construction are inadequate to resolve the issue at hand.

Here, the parties do not dispute the validity of the Agreement or the parties' intent to dismiss Corley and Whisonant from the lawsuit in exchange for Olin's agreement to not remove or seek removal of the lawsuit.  Instead, the issue turns on what the phrase "based in whole or in part" means or, more distinctly, what the phrase modifies within the removal clause.  Olin construes the phrase to modify the language "not to remove or seek to remove the Lawsuit to federal court," meaning Olin is limited from removing the lawsuit only if (1) the removal is pursuant to § 1332, *and* (2) the removal is based in whole or in part on Plaintiffs' voluntary dismissal of Corley and Whisonant.  Olin supports this construction by reasoning that it corresponds with "the specific circumstances that gave rise to the Agreement," that is that Corley and Whisonant were joined for the sole purpose of destroying diversity jurisdiction.  (Doc. 8 at 7).  This, however, is not borne out by the record facts and fails to support Olin's theory of construction, as it is undisputed that Corley was the plant manager and Whisonant the safety manager for Olin at the time of the alleged February 17, 2018 chlorine gas release. Notably, at the time the Agreement was signed, this was the only alleged release, Plaintiffs brought the same allegations against each of these defendants as they did Olin, and Plaintiffs sought relief jointly and severally against all defendants. Furthermore, Olin never asserted allegations of fraudulent joinder.  Consequently, no factual support exists that, at the time the Agreement was reached, Corley and Whisonant were joined for the sole purpose of defeating diversity jurisdiction.  The intention of the parties

upon signing the Agreement was not merely to defeat federal court diversity jurisdiction under § 1332.

Plaintiffs, as "the master of the complaint", chose state jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiffs contend because Corley and Whisonant had a significant connection to the original alleged chlorine gas release, Plaintiffs had no concern for being brought into federal court at the time the Agreement was executed. Indeed, had Plaintiffs declined the offer to dismiss the defendants, they would have lost nothing. Analogously, for Plaintiffs to agree to the Agreement, and for valid consideration for the contract to exist, Plaintiffs must have received something of value. *Marcum v. Embry*, 291 Ala. 400, 403, 282 So. 2d 49, 51 (1973) ("So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract."). For this reason, the "based in" language of the removal clause is most logically read to reference the consideration given by the parties and bar Olin's removal of the lawsuit, for any reason under § 1332, because Plaintiffs dismissed Corley and Whisonant as party defendants. Additionally, the Agreement defines "Lawsuit" as the complaint, (number 65-CV-2018-900048) filed in Washington County, Alabama, and makes no reference to subsequent amendments, additions, or alterations. This, too, supports that the parties likely intended that Olin would not remove the suit for any reason under § 1332, including pursuant to the CAFA, § 1332(d), no matter how the lawsuit changed in the future. Accordingly, Plaintiffs' proposed construction is more sensible based on the intent derived from the

contract as a whole.  However, neither parties' construction of the removal clause necessarily upholds or invalidates the contract.   Instead, the conflicting constructions simply place different limitations on the promise made by Olin in the Agreement.

Other rules of contract construction further fail to resolve the conflict. Indeed, provision comparisons within the Agreement provide no assistance; specifically, the removal provision does not conflict with other provisions of the Agreement, nor does the removal clause render any other provision meaningless. Nor does the doctrine of *contra proferentem* aid in the analysis. *See Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.,* 347 So.2d 95, 99 (Ala.1977) (indicating that ambiguities must be interpreted against the party drawing the contract if the circumstances surrounding the contract do not make the terms clear). Based on the evidence before the Court, the Agreement was negotiated at arm's-length by the parties, with both sides having the opportunity to review and alter the provisions.  (*See* Docs. 8 at 9-10; 8-2 at 2-4).  Accordingly, the Court finds that there is no single drafter of the contract.  Instead, both parties are responsible for its construction and the doctrine of *contra proferentem* is inapplicable.  *See also FabArc Steel Supply, Inc.*, 914 So. 2d at 360 ("[W]here both parties to a contract are sophisticated business persons advised by counsel and the contract is a product of negotiations at arm's length between the parties, we find no reason to automatically construe ambiguities in the contract against the drafter.").

Where application of established rules of contract construction fail to resolve the ambiguity of a contract, as here, then the Court must go beyond the four

corners of the agreement, to the circumstances surrounding the agreement.[3]

*FabArc*, 914 So.2d at 361.  The parties have submitted a copy of a June 21, 2018

email, which confirms a June 20, 2018 telephone conversation between parties'

counsel, stating:

> Mac:
>
> This email will confirm our telephone conversation yesterday.
>
> You and I agreed that Defendants will not remove this case to federal court in exchange for which Plaintiffs will voluntarily dismiss Corley and Whisonant as party defendants from the case without prejudice. We will prepare the paperwork necessary to memorialize and accomplish our agreement and send it to you for review and approval. Finally, Plaintiffs also agreed to give Olin (the remaining defendant) until July 10, 2018 to file a responsive pleading to the complaint.
> If you have any questions or if I have misstated our agreement, please let me know.
>
> Thanks.
>
> Halron

(Doc. 6-1 at 14).  A June 22, 2018 email, confirms that the Voluntary Dismissal

Agreement had been drafted (Doc. 8-2 at 2), and a June 28, 2018 email confirms

that no changes were made to the draft of the Agreement. (*Id*. at 4).  Evidence thus

shows, at the time the Agreement was reached, the parties "agreed that

Defendants will not remove this case to federal court in exchange for which

---

[3]     Notably, the Agreement contains a merger clause which Olin contends forecloses review of parol evidence of negations leading up to the execution of the Agreement.  (Doc. 8 at 9). However, once ambiguity has been found, "parole or extrinsic evidence will be allowed to clarify the contract." *Marriott Int'l, Inc. v. deCelle*, 722 So. 2d 760, 762 (Ala. 1998) ("The general rule of contract law provides that if a written contract exists, the rights of the parties are controlled by that contract and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms. However, if the contract is ambiguous, parol or extrinsic evidence will be allowed to clarify the contract." (internal quotations and citations omitted)).

Plaintiffs will voluntarily dismiss Corley and Whisonant as party defendants. . . ."
(Doc. 6-1 at 14).

Having considered the parties' email communications, substantial evidence indicates that the parties intended that Defendants would not remove the case to federal court in exchange for Plaintiffs' dismissal of Corley and Whisonant, clarifying any ambiguity of the Agreement and promises made. Accordingly, Olin's removal of this lawsuit from State court is barred by the parties' contractual agreement. Plaintiffs' Motion to Remand should be granted.

**B. Request for Attorney's Fees and Costs.**

"An order remanding a removed case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Martin v. Franklin Cap. Corp.,* 546 U.S. 132, 134, 126 S. Ct. 704, 707, 163 L. Ed. 2d 547 (2005) (citing 28 U.S.C. § 1447(c)). The decision as to whether to award attorney's fees and costs under § 1447(c) lies within the broad discretion of the district court. *Grace v. Interstate Life & Acc., Ins. Co.*, 916 F. Supp. 1185, 1192 (M.D. Ala. 1996). However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin,* 546 U.S. at 136. "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id*. at 140.

Thus, the standard for awarding fees turns on the reasonableness of the removal. *Id*. at 141.

Plaintiffs contend that Olin lacked an objectively reasonable basis for seeking removal due to the Voluntary Dismissal Agreement and that the wrongful removal has cause unnecessary delay in the case and prejudiced the plaintiffs. In support, Plaintiffs state, Olin removed this case to federal court on September 9, 2022 with knowledge that a meeting had been set in State court for October 6, 2022 at the Washington County Courthouse, where Plaintiffs anticipated that a trial date would be set. Olin, on the other hand, asserts that until Plaintiffs substantially altered the lawsuit with the filing of their Second Amended Complaint on August 10, 2022, and up until that time, Olin abided by the Agreement and participated in litigation in State court.

Given the ambiguity of the Agreement as previously discussed, it cannot be said that Olin's interpretation of the removal clause was objectionably unreasonable, as the construction of the left the door open to interpretation(s) that the parties did not intend based on their contemporaneous email. For this reason, Olin had an objectively reasonable basis for removing this case to federal court pursuant to the CAFA. Moreover, it cannot be said that Olin has caused a substantial delay in the case or that its actions were for the purpose of delay. This case has actively been litigated in State court for approximately four years, with Plaintiffs' Second Amended Complaint only recently bringing this suit within the parameters of the CAFA. Therefore, Olin's removal of the case has not been the

cause of substantial delay or prejudice, and the undersigned submits that Plaintiffs'
request for attorney's fees and costs should be denied.

### III.    Conclusion

For the reasons stated above, it is recommended that Plaintiffs' Motion to
Remand (Doc. 6) be **GRANTED**, that Plaintiffs' request for an award of attorney's
fees and costs incurred in seeking remand be **DENIED**, and that this action be
**REMANDED** to the Circuit Court of Washington County, Alabama.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in
the manner provided by law. Any party who objects to this recommendation or
anything in it must, within fourteen (14) days of the date of service of this document,
file specific written objections with the Clerk of this Court. See 28 U.S.C. §
636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note
that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate
judge's findings or recommendations contained in a report and recommendation
in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to
challenge on appeal the district court's order based on unobjected-to factual and
legal conclusions if the party was informed of the time period for objecting and the
consequences on appeal for failing to object. In the absence of a proper objection,
however, the court may review on appeal for plain error if necessary in the interests
of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or
recommendation to which objection is made, state the basis for the objection, and

specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **6th day of January 2023.**

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**